**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE SMITH, LEONIE TRUNTE, and M.L. | |
| Plaintiffs, | Case No: |
| vs. | JURY TRIAL DEMANDED |
| AMAZON.COM, INC. | |
| Serve:<br>CSC-Lawyers Incorporating Service Company<br>221 Bolivar Street<br>Jefferson City, MO 65101 | |
| and | |
| AMAZON.COM SERVICES LLC | |
| Serve:<br>CSC-Lawyers Incorporating Service Company<br>221 Bolivar Street<br>Jefferson City, MO 65101 | |
| Defendants. | |

## COMPLAINT

**COME NOW** Plaintiffs Stephanie Smith, Leonie Trunte and M.L., and for their cause of action against Defendants Amazon.com, Inc. and Amazon.com Services, LLC state as follows to the Court:

### PARTIES

1.      Stephanie Smith (hereinafter "Smith") is a resident of St. Louis County, Missouri.

1

2.      Leonie Trunte (hereinafter "Trunte") is a resident of Germany.  At all relevant times, Leonie was a foreign exchange student in the home of Robert Gutowski (hereinafter "Gutowski") in St. Louis County, Missouri.

3.      M.L. is a resident of Germany.  At all relevant times, M.L. was a minor child in St. Louis County, Missouri as a foreign exchange student in the home of Gutowski.

4.      Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, King County, Washington.  At all relevant times, Amazon.com, Inc., pursuant to RSMo. 506.500 and 15 U.S.C. § 2052(a)(7)–(8), was a holder, seller, marketer and/or distributor of consumer products.  Additionally, Amazon.com, Inc. operates Amazon Fulfillment Centers.

5.      Amazon.com Services LLC is a manager-managed Delaware limited liability company with managers located in Seattle, King County, Washington.  At all relevant times, Amazon.com Services LLC, pursuant to RSMo. 506.500 and 15 U.S.C. § 2052(a)(7)–(8), was a holder, seller, marketer and/or distributor of consumer products.  Additionally, Amazon.com Services LLC operates Amazon Fulfillment Centers.  Amazon.com, Inc. and Amazon.com Services LLC are referred to collectively as "Amazon."

6.      John Doe Entities 1–10 ("John Doe") are unidentified manufacturers and members of the chain of distribution of the relevant spy cameras that, when identified, may also be liable under the claims asserted herein, or other independent claims as discovery may reveal. Despite a good faith exercise of due diligence to identify John Doe Entities 1-10, Plaintiffs have been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

2

## JURISDICTION and VENUE

7.     This court has original jurisdiction over the matter and parties pursuant to 28 USC § 1332 as there is complete diversity amongst the parties and the value in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court retains personal jurisdiction over all of the Defendants pursuant to RSMo. 506.500 because all Defendants transact business in the state of Missouri, all Defendants have made contracts within the state of Missouri, all Defendants have caused tortious injury in Missouri by acts within Missouri, and caused tortious injury in Missouri by acts outside of Missouri while deriving substantial revenue from goods used or consumed, or services rendered, in Missouri.  Additionally, upon information and belief, Amazon operates one or more aspects of its business physically in Missouri and owns, uses and/or possesses real estate situated in Missouri.   Finally, this case arises out of the products designed, manufactured, offered, marketed, sold and/or distributed to Missouri citizens by Defendants; therefore, Defendants have both intentionally directed the products to Missouri and purposefully availed themselves of the privileges and benefits of placing their product into the stream of commerce in Missouri and maintain sufficient contacts with Missouri to confer personal jurisdiction upon this Court.

9.     Venue is proper in the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(a) as a substantial portion of the events giving rise to the claims herein took place in St. Louis County, Missouri, including, upon information and belief, (1) the initiation of the purchase of the relevant spy cameras via Amazon; (2) the receipt of the relevant spy cameras from Amazon; and, (3) the injuries suffered by Plaintiffs.

## FACTS

10.     Amazon operates an online retail store, Amazon.com (hereinafter referred to as "online retail store"). As the operator of that online retail store, Amazon controls what products are sold, how the products are depicted, the content of product listings and descriptions, and the details of the transaction with the customers and vendors.

11.     Upon information and belief, Amazon exercises its control to render individual vendors virtually anonymous, negating vendor brand recognition and incentivizing dependence on Amazon's name, input, and control.

12.     Amazon exercises control over which products can be sold through its online retail store via its "Product Safety Team," which is responsible for reviewing products before listing to ensure, among other things, those products do not (1) infringe on privacy; (2) surreptitiously record others for sexual purposes; and/or, (3) create and store child sex abuse material. If any of these criteria are met during the Product Safety Team's review process, the product should not be offered for sale on Amazon's online retail store.

13.     Amazon next exercises control of which products can be sold on its online retail store through its "Dangerous Goods Team," which is responsible for reviewing and approving certain products from vendors, such as those powered by lithium ion batteries, before they can be sold. During this review process, Amazon is able to further determine whether a product is unlawful, illegal, or "designed, adapted, or intended for producing . . . any indecent or immoral use" pursuant to federal criminal code 18 U.S.C. § 1462.

14.     Amazon has an additional layer of control over "Amazon Prime" products which are stored in Amazon Fulfillment Centers and sold through Amazon's Fulfillment by Amazon ("FBA") program. Products stored in Amazon Fulfillment Centers undergo an additional level

4

of inspection by Amazon, and Amazon Prime products enjoy improved visibility on the online retail store.

15.    As such, Amazon has at least three opportunities to inspect and ensure Amazon Prime products are safe, lawful, and not designed, adapted, or intended for producing any indecent or immoral use before it offers the products for sale on its online retail store.

16.    Sometime prior to June 14, 2019, John Does designed and manufactured hidden spy cameras for voyeuristic and unlawful purposes, which include, but are not limited to, bath towel hook cameras, shower head cameras, USB charger port cameras and air cleaner cameras (hereinafter collectively referred to as "Spy Cameras").

17.    The bath towel hook cameras are Spy Cameras consisting of a mountable hook with an embedded pinhole camera which allows users to secretly record audio and video of individuals without their knowledge or consent in immoral and indecent places such as bathrooms.  The bath towel Spy Camera is motion-activated and records to a memory card. There is no audible or visible indicator that the Spy Camera has activated or is recording. Consequently, without notice of recording, the subject of the Spy Camera is deprived of any opportunity to either decline or consent to being recorded.

18.    The shower head cameras are Spy Cameras consisting of an actual shower head with an embedded pinhole camera which allows users to secretly record audio and video of individuals without their knowledge or consent in immoral and indecent places such as bathrooms. This shower head Spy Camera is motion-activated and records to a memory card. There is no audible or visible indicator that the Spy Camera has activated or is recording. Consequently, without notice of recording, the subject of the Spy Camera is deprived of any opportunity to either decline or consent to being recorded.

5

19.    The USB charger port cameras are Spy Cameras consisting of a USB "block" with an embedded pinhole camera which is to be plugged into an electrical outlet to give the appearance it is a normal USB block designed to charge devices via USB ports; however, it allows users to secretly record audio and video of individuals without their knowledge or consent in immoral and indecent places such as bathrooms and bedrooms. The USB charger Spy Camera is motion-activated and records to a memory card. There is no audible or visible indicator that the Spy Camera has activated or is recording. Consequently, without notice of recording, the subject of the Spy Camera is deprived of any opportunity to either decline or consent to being recorded.

20.    The air cleaner hidden spy camera is a Spy Camera consisting of an air cleaner with an embedded pinhole camera with live video viewing and infrared night vision designed to look like a air cleaner (or a desk fan); however, it allows users to secretly record audio and video of individuals without their knowledge or consent in immoral and indecent places such as bathrooms and bedrooms. The air cleaner Spy Camera is motion-activated and records to a memory card. There is no audible or visible indicator that the Spy Camera has activated or is recording. Consequently, without notice of recording, the subject of the Spy Camera is deprived of any opportunity to either decline or consent to being recorded.

21.    Beginning in June 2011, multiple United States and international news outlets— including the Daily Mail, The Sun, ABC, NBC and Indian Express (which noted its article was trending globally)—reported that hidden hook cameras such as the Spy Cameras were being used to surreptitiously record audio and video of individuals without their knowledge or consent in

bathrooms ranging from Starbucks to United States Military facilities.[1]   Popular report verification website Snopes.com also did an investigation corroborating the reports.[2]

22.   As a result of the articles referenced herein, Amazon has been aware since at least 2011 that the intended and foreseeable use of hidden cameras such as theses Spy Cameras were and are to surreptitiously record audio and video of individuals without their knowledge or consent in bathrooms.

23.   These Spy Cameras are considered "Dangerous Goods" by Amazon because they are powered by lithium ion batteries, which required review by Amazon and special handling to comply with shipping and safety regulations.   Amazon knew from this review that the Spy Cameras were surreptitious recording devices designed, adapted, or intended for producing indecent or immoral use, and were therefore unlawful and/or illegal per federal law, Missouri law and Amazon policies.

24.   Despite this, Amazon approved the Spy Cameras for sale as an Amazon Prime product at least as early as 2016, knowing that spy camera listings in its online retail store sell products such as the Spy Cameras are capable of, and intended for, secretly recording sexual encounters with images such as this:

---

[1]   *See*   https://www.dailymail.co.uk/news/article-2003012/Starbucks-voyeur-planted-hidden-cameras-store-bathrooms-dead-hotel.html;   https://www.nbcdfw.com/news/local/more-hidden-cameras-found-in-north-texas-restaurants/124858/;   https://interestingengineering.com/culture/woman-finds-hidden-camera-disguised-hook; https://www.thesun.co.uk/tech/3331532/perverts-are-attaching-spy-camera-coat-hooks-to-back-of-bathroom-cubicle-doors-to-film-women-without-them-knowing/;https://www.wwltv.com/article/news/the-spy-camera-sold-on-amazon-police-want-you-to-know-about/289-432096196;   https://indianexpress.com/article/trending/trending-globally/plastic-hooks-sockets-with-spy-camera-report-if-seen-in-changing-rooms-or-toilet-4912209/; https://www.record-eagle.com/news/local_news/records-man-put-up-hidden-camera-in-bathroom/article_36e447de-dd53-5b68-bc23-f4471110adb4.html;   https://www.asiaone.com/singapore/member-sex-site-sammyboy-forum-filmed-women-toilet-hidden-camera (last accessed Mar. 23, 2023).

[2] https://www.snopes.com/fact-check/spy-cameras-in-hotel-room-hooks/ (last accessed Mar. 23, 2023).



25.    John Doe participated in Amazon's FBA program, shipping the Spy Cameras to Amazon's Fulfillment Center.   On arrival, Amazon personnel inspected the Spy Cameras; therefore, Amazon was again made aware that the Spy Cameras were surreptitious recording devices designed, adapted, or intended for producing indecent or immoral use and were therefore unlawful and/or illegal per federal law (including federal criminal code 18 U.S.C. § 1462), Missouri law and Amazon policies.

26.    Once accepted at a Fulfillment Center, the Spy Cameras were offered for sale by Amazon on its online retail store.

27.    Listings for the bath towel Spy Camera depict it used in a variety of illicit ways; for example, as a towel hook that "won't attract attention" from the victim, who would presumably hang a towel to be used in drying her undressed body.



28.     The intended use of this Spy Camera as explicitly portrayed on Amazon's online retail store—e.g. as a towel hook in a bathroom to secretly record undressed individuals without their consent—is a federal felony and also a crime under Missouri Law. *See* R.S.M.o §§ 573.023, 573.037. 573.035, 18 U.S.C. §§ 1801, 2512, 2251(a). ***This intended and foreseeable use of the Spy Camera was exactly how the Spy Camera was used on Plaintiffs and in multiple other instances since at least 2011.***

29.     Listings for the USB charger Spy Cameras depict them used in a variety of illicit ways; for example as a "secret" "hidden" "spy" camera to spy on a nanny.

30.     The intended use of this Spy Camera as explicitly portrayed on Amazon's online retail store—e.g. to secretly record undressed individuals without their consent—is a federal felony and also a crime under Missouri Law. *See* R.S.M.o §§ 573.023, 573.037. 573.035, 18 U.S.C. §§ 1801, 2512, 2251(a). ***This intended and foreseeable use of the Spy Camera was exactly how the Spy Camera was used on Plaintiffs and in multiple other instances since at least 2011.***



9

31.    At all relevant times, Amazon was aware of the prior and intended uses of these products, including the Spy Cameras, making the illegal, indecent, and immoral use of such products—as portrayed on Amazon's online retail store—foreseeable to Amazon at all relevant times. This includes the foreseeable criminal use of the Spy Cameras as portrayed on Amazon's online retail store and carried out by Mr. Gutowski.

32.    Now available for purchase, Amazon's search algorithms funneled individuals seeking spy cameras for indecent or immoral uses directly toward the Spy Cameras. For example, a search for "bathroom spy camera" on Amazon's online retail store returns the bath towel hook Spy Camera as the fourth, and immediately visible, option. Those search results also suggested an alternative search, "bathroom spy camera," which returned the bath towel hook Spy Camera as the fifth, and immediately visible, option.

33.    Upon information and belief, including information provided by the St. Louis County police department, on or about June 14, 2019, Mr. Gutowski purchased a bath towel hook Spy Camera and a USB charging Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[3]

34.    Upon information and belief, including information provided by the St. Louis County police department, on or about November 20, 2019, Mr. Gutowski purchased another bath towel hook Spy Camera by visiting Amazon.com after easily locating the Spy Cameras'

---

[3] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[4]

35.    Upon information and belief, including information provided by the St. Louis County police department, on or about January 4, 2020, Mr. Gutowski purchased another bath towel hook Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[5]

36.    Upon information and belief, including information provided by the St. Louis County police department, on or about January 31, 2020, Mr. Gutowski purchased another bath towel hook Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[6]

37.    Upon information and belief, including information provided by the St. Louis County police department, on or about April 1, 2021, Mr. Gutowski Mr. Gutowski purchased another bath towel hook Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[7]

---

[4] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

[5] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

[6] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

[7] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

38.     Upon information and belief, including information provided by the St. Louis County police department, on or about May 11, 2021, Mr. Gutowski Mr. Gutowski purchased an air cleaner hidden Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.[8]

## LEONIE TRUNTE

39.     Plaintiff Leonie Trunte (hereinafter Trunte) was a German foreign exchange student who stayed with Mr. Gutowski and his family for the 2016 and 2017 school year as part of an exchange student program.

40.     Sometime prior to July 19, 2019, Plaintiff Trunte came back to the United States to stay for the summer with Mr. Gutowoski and his family.

41.     On or about June 14, 2019, Mr. Gutwoski purchased a bath towel hook Spy Camera and a USB charging spy camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.

42.     Sometime prior to July 19, 2019, Amazon shipped the bath towel hook Spy Camera and the USB charger Spy Camera Mr. Gutowski ordered on or about June 14, 2019 from its Fulfillment Center to Mr. Gutowski.  Before the Spy Cameras were shipped, Amazon inspected the Spy Cameras—because they are powered by a lithium ion battery—in accordance with IATA Packing Instruction 966.  Via this inspection, Amazon knew these Spy Cameras were surreptitious recording devices and were therefore unlawful and/or illegal per federal law, Missouri law and Amazon policies.

---

[8] Despite a good faith exercise of due diligence to identify the manufacturer of the Spy Camera John Doe Entities 1-10), Plaintiff has been unable to do so because Amazon has been unwilling to share information about this particular transaction, and participants in parallel civil and criminal litigation have also been unwilling to provide additional information as to the identities of John Doe Entities. *See* Mo. Sup. Ct. Rule 55.33(b).

43.    Amazon's choice to ship the Spy Cameras to Mr. Gutowski violated 18 U.S.C. § 1461, insofar as it mailed a "crime-inciting" product "designed, adapted, or intended . . . for any indecent or immoral use," and 18 U.S.C. § 1465, insofar as it knowingly transported, in interstate commerce, a "matter of indecent or immoral character."

44.    Mr. Gutowski received the Spy Cameras sometime prior to July 19, 2019, along with instructions on how to activate the audio, rendering the bath towel hook Spy Camera and the USB charging Spy Camera illegal audio/video devices disguised to look like something that is not designed to record sound.

45.    Sometime prior to July 19, 2019, when Plaintiff Trunte came back to the United States to stay for the summer with Mr. Gutowski and his family, his family was staying at Beth Maddox's house located at 16755 Kingston Estates Drive, Wildwood, MO 63011 while the Gutowski family home was on the market for sale.

46.    Sometime prior to July 19, 2019, Mr. Gutowski installed the USB charging Spy Camera in a private bedroom of Beth Maddox's home, where he had arranged for exchange student Plaintiff Trunte to sleep, for the criminal purpose of recording her while undressed. *In this case, the Spy Camera was used precisely as depicted on Amazon's online retail store.*

47.    Sometime prior to July 19, 2019, Mr. Gutowski installed the bath towel hook Spy Camera in a private bathroom of Beth Maddox's home, where he had arranged for exchange student Plaintiff Trunte to use, for the criminal purpose of recording her while undressed. *In this case, the Spy Camera was used precisely as depicted on Amazon's online retail store.*

48.    Sometime after July 19, 2019, Mr. Gutowski recorded videos of Plaintiff Trunte undressing and going to the bathroom, as well as undressing in the bedroom and masturbating on the bed, using the bath towel hook Spy Camera and/or the USB charging Spy Camera.

49.     Mr. Gutowski eventually traded the videos he captured of Plaintiff Trunte with others on the internet.

50.     Sometime after November 30, 2022, Plaintiff Trunte discovered that Mr. Gutowski had used Amazon's Spy Cameras to surreptitiously record her in her private bedroom and bathroom. Plaintiff Trunte suffered acute physical injuries and emotional distress, including, but not limited to: (1) persistent feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and, (6) difficulty concentrating; (7) sexual avoidance behavior; and (8) paranoia.

51.     Since the acute event, Plaintiff Trunte continues to suffer ongoing chronic physical and emotional injuries, including (1) persistent feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and, (6) difficulty concentrating; (7) sexual avoidance behavior; and (8) paranoia.

52.     As a direct and proximate result of Defendants' wantonly offering, promoting, marketing, selling and distributing the illegal and defective Spy Cameras, Plaintiff Trunte was exposed, exploited, abused, damaged and harmed by being surreptitiously recorded in her private bedroom and bathroom.  Defendants are liable for all of Plaintiff Trunte physical and emotional injuries, including but not limited to those set forth herein and as follows:

      a.      pain and suffering, including mental anguish;

      b.      loss of enjoyment of life;

      c.      past and future medical expenses;

      d.      loss of property; and,

      e.      other damages incurred as a result of Defendants' conduct.

**M.L.**

53.    Sometime after November 30, 2022, Plaintiff M.L., a German foreign exchange student and minor child in 2019 and 2020, discovered that Mr. Gutowski had used Amazon's Spy Cameras to surreptitiously record her in her private bedroom and bathroom inside the home of Mr. Gutowski.

54.    Between November of 2019 and March of 2020, Plaintiff M.L. lived with Mr. Gutowski and his family at their home on King Carey Drive, St. Louis, MO 63146 as part of a foreign exchange program.

55.    On or about October 4, 2019, Mr. Gutowski purchased another USB charging Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.

56.    On or about November 20, 2019, January 4, 2020 and January 31, 2020, Mr. Gutowski purchased three more bath towel hook Spy Cameras by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.

57.    All three of the above bath towel hook Spy Cameras were purchased while M.L. lived in Mr. Gutowski's home.

58.    Upon information and believe, Mr. Gutowski purchased the USB charging Spy Camera on October 4, 2019, when he learned M.L. would be coming to the United States as part of an exchange program and would be staying at his home.

59.    Prior to November 20, 2019. Mr. Gutowski had already purchased at least one bath towel hook Spy Camera and one USB charging Spy Camera, both used to record Plaintiff Trunte.

15

60.    Soon after placing the aforementioned orders, Amazon shipped the three bath towel hook Spy Cameras and one USB charging Spy Camera Mr. Gutowski ordered on or about October 2, 2019, November 20, 2019, January 4, 2019 and January 31, 2019 from its Fulfillment Center to Mr. Gutowski. Before the Spy Cameras were shipped, Amazon inspected the Spy Cameras—because they are powered by a lithium ion battery—in accordance with IATA Packing Instruction 966. Via this inspection, Amazon knew these Spy Cameras were surreptitious recording devices and were therefore unlawful and/or illegal per federal law, Missouri law and Amazon policies.

61.    Amazon's choice to ship the Spy Cameras to Mr. Gutowski violated 18 U.S.C. § 1461, insofar as it mailed a "crime-inciting" product "designed, adapted, or intended . . . for any indecent or immoral use," and 18 U.S.C. § 1465, insofar as it knowingly transported, in interstate commerce, a "matter of indecent or immoral character."

62.    Mr. Gutowski received the Spy Cameras along with instructions on how to activate the audio, rendering the Spy Cameras illegal audio/video devices disguised to look like something that is not designed to record sound.

63.    Mr. Gutowski installed the Spy Cameras in a private bathroom of his home designated for the use of M.L., a German foreign exchange student and minor child in 2019 and 2020, for the criminal purpose of recording her while undressed and using the bathroom. *In this case, the Spy Camera was used precisely as depicted on Amazon's online retail store.*

64.    Mr. Gutowski eventually traded the videos he captured of Plaintiff M.L. with others on the internet.

65.    Sometime after, November 30, 2022, M.L. discovered that Mr. Gutowski had been using Amazon's Spy Cameras to surreptitiously record her in her private bathroom and bedroom. M.L. suffered acute physical injuries and emotional distress, including: (1) persistent

feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and (6) difficulty concentrating; (7) sexual avoidance behavior; and, (8) paranoia.

66.    Since the acute event, M.L. continues to suffer ongoing chronic physical and emotional injuries, including: (1) persistent feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and, (6) difficulty concentrating; (7) sexual avoidance behavior; and (8) paranoia.

67.    As a direct and proximate result of Defendants' wantonly offering, promoting, marketing, selling and distributing the illegal and defective Spy Cameras, M.L. was exposed, exploited, abused, damaged and harmed by being surreptitiously recorded in her private bathroom. Defendants are liable for all of M.L.'s physical and emotional injuries, including but not limited to those set forth herein and as follows:

    f.    pain and suffering, including mental anguish;

    g.    loss of enjoyment of life;

    h.    past and future medical expenses;

    i.    loss of property; and,

    j.    other damages incurred as a result of Defendants' conduct.

## STEPHANIE SMITH

68.    From September of 2021 until approximately November of 2022, Plaintiff Stephanie Smith and Mr. Gutowski dated, while Mr. Gutowski lived on McKelvey Road in St. Louis County, Missouri.

69.    While Plaintiff Smith and Mr. Gutowski dated, she would stay overnight at his house on McKelvey Road.

70.     On or about April 1, 2021, Mr. Gutowski purchased another bath towel hook Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.

71.     On or about May 11, 2021, Mr. Gutowski purchased an air cleaner hidden camera Spy Camera by visiting Amazon.com after easily locating the Spy Cameras' listings as responsive to his illegal, indecent and immoral purposes via Amazon's search algorithms.

72.     Soon after placing the aforementioned orders, Amazon shipped the Spy Cameras from its Fulfillment Center to Mr. Gutowski. Before the Spy Cameras were shipped, Amazon inspected the Spy Cameras—because they are powered by a lithium ion battery—in accordance with IATA Packing Instruction 966. Via this inspection, Amazon knew the Spy Cameras were surreptitious recording devices and were therefore unlawful and/or illegal per federal law, Missouri and Amazon policies.

73.     Amazon's choice to ship the Spy Cameras to Mr. Gutowski violated 18 U.S.C. § 1461, insofar as it mailed a "crime-inciting" product "designed, adapted, or intended . . . for any indecent or immoral use," and 18 U.S.C. § 1465, insofar as it knowingly transported, in interstate commerce, a "matter of indecent or immoral character."

74.     Mr. Gutowski received the Spy Cameras along with instructions on how to activate the audio, rendering the Spy Cameras an illegal audio/video device disguised to look like something that is not designed to record sound.

75.     Mr. Gutowski installed the Spy Cameras in a private bathroom and bedroom of his home designated for the use of Plaintiff Smith, for the criminal purpose of recording her while undressed and using the restroom. *In this case, the Spy Camera was used precisely as depicted on Amazon's online retail store.*

76.     Mr. Gutowski eventually traded the videos he captured of Plaintiff Smtih with others on the internet.

77.     Sometime after November 30, 2022, Plaintiff Smith discovered that Mr. Gutowski had been using Amazon's Spy Cameras to surreptitiously record her in her private bathroom and his bedroom.  Plaintiff Smith suffered acute physical injuries and emotional distress, including: (1) persistent feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and (6) difficulty concentrating; (7) sexual avoidance behavior; and (8) paranoia.

78.     Since the acute event, Plaintiff Smith continues to suffer ongoing chronic physical and emotional injuries, including: (1) persistent feelings of sadness, hopelessness, and worthlessness; (2) anxiety; (3) emptiness that lingers and interferes with daily function; (4) changes in sleep patterns; (5) social withdrawal and/or isolation; and (6) difficulty concentrating; (7) sexual avoidance behavior; and (8) paranoia.

79.     As a direct and proximate result of Defendants' wantonly offering, promoting, marketing, selling and distributing the illegal and defective Spy Cameras, Plaintiff Smith was exposed, exploited, abused, damaged and harmed by being surreptitiously recorded in her private bathroom and bedroom.  Defendants are liable for all of Plaintiff Smith's physical and emotional injuries, including but not limited to those set forth herein and as follows:

k.      pain and suffering, including mental anguish;

l.      loss of enjoyment of life;

m.      past and future medical expenses;

n.      loss of property; and,

o.      other damages incurred as a result of Defendants' conduct.

## COUNT I-NEGLIGENCE
## PLAINTIFFS V. AMAZON

80.     Plaintiffs repeats and incorporates by reference the allegations contained in paragraphs 1 through 79 of this Complaint as if set forth herein verbatim.

81.     The Spy Cameras record and store audio and video without warning or notice to the subject being recorded.  The intended use of these Spy Cameras as portrayed on Amazon's online retail store—as a towel hook in a bathroom to secretly record undressed individuals without their consent, as a USB charger, a shower head and an air cleaner—constitutes criminal exploitation of another person under federal and state law.

82.     Amazon owes a civil and criminal duty, imposed by federal and state law, to not promote, market, sell or distribute products which are illegal, defective and/or present a foreseeable and unreasonable risk of harm to others, including via the foreseeable criminal conduct of a third person.

83.     Upon information and belief, Amazon breached these duties and was negligent by:

      a.     possessing, selling, marketing and/or distributing the Spy Cameras in violation of criminal codes RSMo. Section 542.400 to 542.422 and 18 U.S.C. § 2512, which constitutes prima facie negligence;

      b.     promoting purchase and criminal use of the Spy Cameras as an "Amazon Prime" product;

      c.     ignoring or failing to remove listings/offer sheets promoting the Spy Cameras as intended for illegal, immoral and/or indecent uses;

      d.     failing to reject the Spy Cameras as illegal and defective during its "Dangerous Goods" review;

      e.     failing to reject the Spy Cameras as illegal and defective when inspecting it on receipt at an Amazon Fulfillment Center despite having actual knowledge of the defect;

> f.    failing to reject the Spy Cameras as illegal and defective when receiving and fulfilling Mr. Gutowski's orders; and,
>
> g.    promoting, marketing, selling and/or distributing the Spy Cameras, which encourages criminal conduct and exposes others, including Plaintiffs, to a foreseeable high risk of harm from criminal conduct when the Spy Cameras are used for its intended and marketed purpose.

84.    As a direct and proximate result of Amazon's acts and omissions, Plaintiffs have suffered damages as aforementioned and will continue to suffer damages in the future.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendant Amazon, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.

## COUNT II-STRICT LIABILITY – PRODUCT DEFECT
## PLAINTIFFS v. AMAZON

85.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 84 of this Complaint as if set forth herein verbatim.

86.    These Spy Cameras record and store audio and video without warning or notice to the subject being recorded. The intended use of these Spy Cameras as portrayed on Amazon's online retail store—as a towel hook in a bathroom to secretly record undressed individuals without their consent, as a USB charger, a shower head and an air cleaner—constitutes criminal exploitation of another person under federal and state law.

87.    At the time of its design, manufacture, distribution, and sale of the Spy Cameras, they were in a defective condition unreasonably dangerous when put to a reasonably anticipated use in that they are illegal, affirmatively encourages criminal misuse and lack any audible or visible warning that recording was beginning or in progress. As a product that fails to comply with state and federal law, the Spy Cameras are defective as a matter of law.

88.    At the time of the Spy Product's manufacture, safer alternative designs were economically and technologically feasible that would have eliminated the risk of injury to Plaintiffs by providing an audible and/or visible warning or notice to the subject being recorded to deter undesirable conduct without altering a fundamental and necessary characteristic of the of the Spy Cameras.

89.    Defendant Amazon designed, manufactured, distributed, and/or sold the Spy Cameras, in the course of its business.

90.    The Spy Cameras were used in a manner reasonably anticipated by Defendant Amazon.

91.    Mr. Gutowski' use of the Spy Camera to exploit and abuse someone, including Plaintiffs, was foreseeable.

92.    Upon information and belief, at all relevant times, as the seller and/or distributor of the Spy Cameras, Amazon knew about the Spy Cameras' defects.

93.    As a direct and proximate result of the defective condition of the Spy Cameras, Amazon is strictly liable to Plaintiffs for damages suffered and damages which they will continue to suffer in the future, including, but not limited to emotional and physical distress.

94.    Despite Plaintiffs' good-faith exercise of due diligence, as stated herein the manufacturer of the Spy Camera cannot be identified. *See* Mo. Sup. Ct. Rule 55.33(b).

WHEREFORE, Plaintiffs pray this Court enters judgment in their favor and against Defendant Amazon, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.

## COUNT III-NEGLIGENCE
## PLAINTIFFS v. JOHN DOE

95.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 94 of this Complaint as if set forth herein verbatim.

96.     The Spy Cameras record and store audio and video without warning or notice to the subject being recorded. The intended use of these Spy Cameras as portrayed on Amazon's online retail store—as a towel hook in a bathroom to secretly record undressed individuals without their consent, as a USB charger, a shower head and an air cleaner—constitutes criminal exploitation of another person under federal and state law.

97.     John Doe owes a duty to not design, manufacture, offer, sell or distribute products which are illegal and/or present a foreseeable and unreasonable risk of harm to others, including via criminal conduct of a third person.

98.     John Doe breached this duty by:

      a.     designing, manufacturing, offering, marketing, selling and/or distributing the Spy Cameras in violation of criminal codes RSMo. Section 542.400 to 542.422 and 18 U.S.C. § 2512, which constitutes prima facie negligence;

      b.     failing to include an audible or visible warning when the Spy Cameras begin recording to provide the subject with notice that they were being recorded; and,

      c.     designing, manufacturing, offering, marketing, selling and/or distributing the Spy Cameras, which encourages criminal conduct.

99.     At all relevant times, John Doe acted wantonly which manifested in a reckless indifference to the rights and interests of Plaintiffs.

100.    As a direct and proximate result of John Doe's negligence, Plaintiffs have suffered damages and will continue to suffer damages in the future.

23

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendant John Doe, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.

## COUNT IV-STRICT LIABILITY – PRODUCT DEFECT
## PLAINTIFFS v. JOHN DOE

101.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 100 of this Complaint as if set forth herein verbatim.

102.    These Spy Cameras record and store audio and video without warning or notice to the subject being recorded.  The intended use of these Spy Cameras as portrayed on Amazon's online retail store—as a towel hook in a bathroom to secretly record undressed individuals without their consent, as a USB charger, a shower head and an air cleaner—constitutes criminal exploitation of another person under federal and state law.

103.    At the time of its design, manufacture, distribution, and sale of the Spy Cameras, they were in a defective condition unreasonably dangerous when put to a reasonably anticipated use in that they are illegal, affirmatively encourages criminal misuse and lack any audible or visible warning that recording was beginning or in progress.  As a product that fails to comply with state and federal law, the Spy Cameras are defective as a matter of law.

104.    At the time of the Spy Product's manufacture, safer alternative designs were economically and technologically feasible at that would have eliminated the risk of injury to Plaintiffs by providing an audible and/or visible warning or notice to the subject being recorded to deter undesirable conduct without altering a fundamental and necessary characteristic of the of the Spy Cameras.

24

105.    John Doe designed, manufactured, marketed, sold and/or distributed the Spy Camera, which was used by Mr. Gutowski as depicted on Amazon's online retail store.

106.    The Spy Cameras were used in a manner reasonably anticipated by Defendant John Doe.

107.    Mr. Gutowski's use of the Spy Cameras to exploit and abuse someone, including Plaintiffs, was foreseeable.

108.    Upon information and belief, at all relevant times, as the seller and/or distributor of the Spy Cameras, John Doe knew about the Spy Cameras' defects.

109.    As a direct and proximate result of the defective condition of the Spy Cameras, John Doe is strictly liable to Plaintiffs for damages suffered and damages which they will continue to suffer in the future, including, but not limited to emotional and physical distress.

110.    Despite Plaintiffs' good-faith exercise of due diligence, as stated herein the manufacturer of the Spy Camera cannot be identified. *See* Mo. Sup. Ct. Rule 55.33(b).

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendant John Doe, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.

## COUNT V-TORT OF OUTRAGE
## PLAINTIFFS v. JOHN DOE and AMAZON

111.    Plaintiffs repeats and incorporates by reference the allegations contained in paragraphs 1 through 110 of this Complaint as if set forth herein verbatim.

112.    Upon information and belief, Defendants knew that Spy Cameras they designed, manufactured, offered, promoted, marketed, sold and distributed, when used as depicted on Amazon's online retail store, would harm the subjects of the recording.

113.    Defendants' collective conduct in designing, manufacturing, offering, promoting, marketing, selling and distributing Spy Cameras with full knowledge of their immoral use since at least 2011 is atrocious, intolerable and so extreme and outrageous as to exceed the bounds of decency.

114.    Defendants intentionally, knowingly and/or with reckless indifference created and distributed a criminal tool that was used to abuse and exploit both children and adults.

115.    As a direct and proximate result of Defendants' reckless indifference in designing, manufacturing, offering, promoting, selling and distributing the Spy Cameras, Plaintiffs have suffered severe emotional distress, so severe that no reasonable person could be expected to endure it.

116.    The severe emotional distress to Plaintiffs resulted in bodily harm and/or was medically diagnosable.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendant John Doe and Amazon, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.


## COUNT VI-CIVIL CONSPIRACY
## PLAINTIFFS v. JOHN DOE and AMAZON

117.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 116 of this Complaint as if set forth herein verbatim.

118.    Upon information and belief, Defendants conspired by concerted action to design, manufacture, promote, market, sell and distribute the Spy Cameras, an illegal and criminal tool certain to cause harm when used as depicted on Amazon's online retail store.

119.    Specifically, Amazon and John Doe conspired to market and distribute a defective product both knew was intended and used for illegal and criminal purposes via Amazon's online retail store for the purpose of profiting from that illegal use.

120.    Possessing, selling and distributing these Spy Cameras is illegal under both state and federal law.

121.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered damages and will continue to suffer damages in the future.  By virtue of the conspiracy, all Defendants are jointly and severally liable for Plaintiffs' damages.

WHEREFORE, Plaintiffs pray this Court enter judgment in their favor and against Defendant John Doe and Amazon, in an amount that is fair and reasonable in excess of Seventy-Five Thousand Dollars ($75,000.00), together with costs expended herein, and for such other and further relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, for:

a.    an amount of compensatory damages determined by a jury according to the laws of the State of Missouri;

b.    treble damages pursuant to 18 U.S.C. § 1964(c);

c.    costs and attorney fees expended in prosecution of this matter pursuant to 18 U.S.C. § 1964(c);

d.    injunctive relief in the form of an order restraining and preventing Defendants from continuing the possession, sale and distribution of the Spy Camera, including products identical thereto, pursuant to 18 U.S.C. § 1964(a);

e.    an order directing Defendants to divest themselves of any interest, direct or indirect, in the sale and distribution of the Spy Camera or products identical thereto, including the divestiture of any and all profits obtained from such sales, pursuant to 18 U.S.C. § 1964(a);

f.    pre-judgment and post-judgment interest as provided under the law; and,

g.    any and all other relief to which the Court deems Plaintiffs are entitled and just and proper.

Respectfully submitted,

**O'LEARY, SHELTON, CORRIGAN, PETERSON, DALTON & QUILLIN, LLC**

By:    /s/ Michael J. Dalton, Jr.
Michael J. Dalton, Jr. #60963
James D. O'Leary,    #45964
The University Tower
1034 South Brentwood, Blvd.
Penthouse 1-A, 23rd Floor
St. Louis, MO 63117
Tel:    (314) 405-9000
Fax:    (314) 405-9999
Dalton@osclaw.com
Oleary@osclaw.com

and

L. Lee Javins II (WV State Bar # 6613)
BAILEY JAVINS & CARTER LC
213 Hale Street
Charleston, WV 25301
(304) 345-0346 (T) / (304) 345-0375 (F)
ljavins@bjc4u.com